Charles Hamilton Houston III, Esq.
Bar No. 020844
GONZALEZ SAGGIO & HARLAN LLP
3030 N. Third Street, Suite 1300
Phoenix, Arizona 85012
Telephone: (602) 358-7216
Facsimile: (602) 926-2540
Charles_Houston@gshllp.com
*Attorneys for ACTAEA, LLC*

FILED ☒   ___ LODGED
___ RECEIVED   ___ COPY

DEC 0 9 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

JOHN DOE ONE,

      Plaintiff,

      vs.

THE UNITED STATES OF AMERICA,

      Defendants.

Case No.:   CIV-87-2110-PCT EHC

**NOTICE OF STRUCTURED SETTLEMENT PURSUANT TO A.R.S. § 12-2903(B)**

Notice is hereby given that one of the beneficiaries of the settlement agreement, Lydia Poseyesva ("Transferor"), in the above-captioned matter is seeking to transfer her interest in future payments to a third party, ACTAEA, LLC ("Transferee"), pursuant to Arizona Revised Statute § 12-2901 *et seq.*[1]   This transaction is commonly known as a structured settlement transfer and is governed by Arizona state law, however, A.R.S. § 12-2903(b) requires that the parties to a structured settlement transfer notify *the governmental authority that previously approved the structured settlement.*   In this case, it was the United States District Court for the District of Arizona that approved the structured settlement at issue on

---

[1] The state court action is styled *In Re: Approval for Transfer of Structured Settlement Payment Rights by Lydia Poseyesva to ACTAEA, LLC* and is currently pending in Navajo County Superior Court, Case No. CV2010-00603.

April 9, 1990.

For the Court's convenience, a copy of the state court Application for Court Approval of a Transfer of Structured Settlement Funds is attached hereto as Exhibit 1. This Notice is being sent to conform with A.R.S. § 12-2903(B).

DATED:  December 9th, 2010          GONZALEZ SAGGIO & HARLAN LLP

By: _____
Charles Hamilton Houston III
*Attorneys for ACTAEA*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2010 I filed this document with the United States District Court for the District of Arizona.

Charles H. Houston III
*Attorney for ACTAEA, LLC*

# EXHIBIT 1

1  Charles Hamilton Houston III
   State Bar # 020844
2  GONZALEZ SAGGIO & HARLAN, LLP
3  3030 N. Third St., Suite 1300
   Phoenix, AZ 85012
4  Tel: 602.358.7216
   Fax: 602.926.2540
5  Email: charles_houston@gshllp.com
6
7  *Attorneys for Applicant ACTAEA, LLC*

CONFORMED COPY OF ORIGINAL

OCT 07 2010

NAVAJO COUNTY SUPERIOR COURT
VALERIE WYANT, CLERK

8            IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA
9                 IN AND FOR THE COUNTY OF NAVAJO
10

11  In Re:  Approval for Transfer of Structured    )    Case No. CV201000603
    Settlement Payment Rights by LYDIA           )
12  POSEYESVA, Transferor, to ACTAEA,LLC        )    **APPLICATION FOR COURT**
    Transferee,                                   )    **APPROVAL OF A TRANSFER OF**
13                                                )    **STRUCTURED SETTLEMENT**
14            Applicants.                         )    **PAYMENT RIGHTS**
15                                                )
16                                                )
                                                  )
17                                                )
18  _____      )

19
20      ACTAEA, LLC ("ACTAEA"), by and through its attorneys, submits this Application
    for Approval of a Transfer ("Application"), pursuant to the Arizona Structured Settlement
21  Transfer Act, A.R.S. § 12-2901 through § 12-2904 ("the Act"). ACTAEA alleges as follows:
22                              <u>GENERAL ALLEGATIONS</u>
23      1.      Transferor, Lydia Poseyesva ("Ms. Poseyesva") is an adult individual who
24  currently resides in Navajo County, Arizona.
25      2.      ACTAEA is a limited liability company duly authorized and existing under the
26  laws of the State of Florida with offices in Coconut Creek, Florida.

                                      1

3.      Venue is appropriate in Navajo County, pursuant to A.R.S. § 12-2903.

## TRANSFER APPLICATION

4.      This Application by ACTAEA is for the approval of the Structured Settlement Annuity Sale and Assignment Agreement dated September 22, 2010 (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit 1 to this Application and incorporated by this reference.

5.      Ms. Poseyesva is the owner of a structured settlement dated in or around 1990.

6.      The settlement provided for the following payments: 1 payment of $10,000 on January 20, 2013; 1 payment of $20,000 due on January 20, 2018; 1 payment of $22,500 due on January 20, 2023; 1 payment of $25,000 due on January 20, 2028 (collectively, the "Periodic Payments"). See Exhibit 1 and Affidavit of Ms. Poseyesva, attached hereto as Exhibit 3.

7.      The structured settlement annuity issuer is:
Monumental Life Insurance
ATTN: Structured Settlements Legal Dept.
4333 Edgewood Rd., NE
Cedar Rapids, IA 52499

8.      The structured settlement obligor is:
AEGON Structured Settlements, Inc.
4333 Edgewood Rd., NE
Cedar Rapids, IA 52499

9.      Ms. Poseyesva and ACTAEA have entered into a contract (the Agreement referenced in paragraph four above) for the sale through an assignment by Ms. Poeyesva to ACTAEA of payments as follows: 1 payment of $10,000 on January 20, 2012; 1 payment of $20,000 due on January 20, 2018; 1 payment of $22,500 due on January 20, 2023; 1 payment of $25,000 due on January 20, 2028 (the "Assigned Payments"). In exchange, ACTAEA will make an immediate payment to Ms. Poseyesva in the net amount of $16,771.84 (the "Purchase

2

1  Price"). See Exhibit 1. This transaction is referred to herein as the "Transfer".

2      10.    In May, 2002, the Arizona Legislature enacted A.R.S. § 12-2901 through § 12-

3  2904 establishing conditions and procedures for the transfer of structured settlements, and

4  requiring approval by the Court of such transfers.

5      11.    ACTAEA provided a Disclosure Statement[1] to Ms. Poseyesva on August 25,

6  2010, as required by A.R.S. § 12-2902(B)(2), not less than three days before she signed the

7  Agreement. Ms. Poseyesva signed the Agreement on September 21, 2010. A copy of the

8  Disclosure Statement is attached as Exhibit 2 and incorporated by this reference.

9      12.    The Transfer is in the best interest of Ms. Poseyesva, as stated in her Affidavit

10  and Payee's Declaration in Support of Application to Transfer Structured Settlement Payment

11  Rights ("Declaration"), which are attached as Exhibits 3 and 4 and incorporated by this

12  reference.

13      13.    Ms. Poseyesva is unmarried and has no children as set forth in the document

14  entitled "Dependents of Ms. Poseyesva" See Exhibit 5.

15      14.    For all the reasons set forth in Ms. Poseyesva's Affidavit and Declaration, the

16  Transfer is in her best interest. See Exhibits 3 and 4.

17      15.    Ms. Poseyesva has been advised by ACTAEA to seek independent professional

18  advice regarding the Transfer, and he has knowingly waived such advice in writing. See

19  Exhibit 3.

20      16.    The transfer of Ms. Poseyesva's structured settlement payment complies with the

21  requirements of A.R.S. § 12-2901 through § 12-2904, and the Transfer would not contravene

22  any applicable law or statute or order of any court or other governmental authority.

23      WHEREFORE, Transferee ACTAEA, LLC hereby respectfully requests that the Court

24  enter a judgment approving the Agreement attached as Exhibit 1, based upon its findings as

25  _____

26  [1] ACTAEA also sent Ms. Poseyesva a separate Disclosure Statement, also attached as part of Exhibit 3, which complies with Iowa statutory law. Although, it is ACTAEA's position that the Iowa statute is not applicable because Ms. Poseyesva resides in Arizona, ACTAEA sent Ms. Poseyesva the additional Disclosure Statement out of an abundance of caution.

required under the Act for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this ___9th___ day of October, 2010.

Charles H. Houston III
GONZALEZ SAGGIO & HARLAN, LLP
3030 N. Third St., Suite 1600
Phoenix, AZ 85012
*Attorneys for ACTAEA, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the U.S. District Court of Arizona via ECF this 4 day of October, 2010

**COPIES** of foregoing mailed via U.S. Mail this 23rd day of October, 2010 to:

Monumental Life Insurance
ATTN: Structured Settlements Legal Dept.
4333 Edgewood Rd., NE
Cedar Rapids, IA  52499

AEGON Structured Settlements, Inc.
4333 Edgewood Rd., NE
Cedar Rapids, IA  52499

Christina Renner

# EXHIBIT 1

# STRUCTURED SETTLEMENT ANNUITY
# SALE AND ASSIGNMENT AGREEMENT

THIS STRUCTURED SETTLEMENT ANNUITY SALE AND ASSIGNMENT AGREEMENT dated as of the September 21, 2010, is entered into by and between **Lydia Poseyesva**, an individual residing in the state of Arizona (hereinafter referred to as "Seller") and **ACTAEA, LLC**, a Florida limited liability company (hereinafter referred to as "Buyer").

WITNESSES THAT in consideration of the premises, the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which each party hereto irrevocably acknowledges, the parties agree as follows:

## SECTION ONE
## PURCHASE AND SALE OF ANNUITY

1.1     **Agreement to Sell and Buy.**  Subject to the terms and conditions set forth in this Structured Settlement Annuity Sale and Assignment Agreement and schedules hereto, which form an integral part of this agreement (collectively referred to as the "Agreement"), Seller hereby agrees to sell, transfer, deliver and irrevocably assign to Buyer and Buyer's successors and assigns at Closing (as hereinafter defined), and Buyer hereby agrees to buy from Seller, all of Seller's right, title and interest in (a) certain payments arising out of an agreement or order to settle a personal injury damage claim (such agreement or order, the "Settlement Agreement"), to which Seller is a party and the payment obligations under which have been assigned to the Annuity Owner, as defined in the Terms Rider attached as Schedule "A" hereto, which said payments are set out and more particularly defined in the Terms Rider (such payments are hereinafter collectively referred to as the "Assigned Payments"), (b) the Annuity (as defined in said Terms Rider) and (c) all Related Rights (as defined in Section 1.9 of this Agreement).  Notwithstanding any references to the Annuity in this Agreement or any other provision of this Agreement to the contrary, the parties agree that the "Assigned Payments" and Related Rights hereunder shall include without limitation Seller's rights under the Settlement Agreement as against the Annuity Owner with respect to the payments identified on Schedule "A" and shall not be limited to Seller's rights under the Annuity.

1.2     **Price and Terms of Payment.**        The purchase price (hereinafter called the "Purchase Price") for the Assigned Payments is as set out in the Terms Rider. Buyer covenants and agrees to pay the Purchase Price on the Closing Date (as hereinafter defined in Section 1.3 hereof) to the Seller in immediately available funds by wire transfer, bank draft or certified check, at Buyer's discretion.  Should any payment from the Assigned Payments be received by the Seller prior to the Closing Date then Seller shall have the right to keep said payment(s) and the Purchase Price shall be reduced by the amount of any such payment(s).

1.3     **Closing.**        The closing of the within transaction shall occur on the fifth (5th) business day following the date on which the last of the conditions precedent set forth in Section 2.1 has been satisfied (hereinafter referred to as the "Closing Date").  The closing shall take place at the Closing Place as stipulated in the Terms Rider or at such other location agreed upon in writing by Buyer and Seller.  At any time prior to the Closing Date Buyer shall have the sole and absolute discretion to cancel this Agreement without further obligation to Seller if (I.) Seller defaults in respect of his obligations hereunder; or (ii) otherwise in accordance with the Agreement.  Further, should any of the conditions precedent remain unsatisfied by the Conditions Date as set out in the Terms Rider then Buyer shall have the sole and absolute right to cancel this Agreement at any time thereafter without further obligation of Buyer to Seller.

1.4     **Delivery of Assigned Payments.**

    (a)     Seller shall deliver or cause to be delivered and assign, and Buyer shall accept, the Assigned Payments on the Closing Date.

    (b)     Seller covenants with Buyer that at the time of closing on the Closing Date title to the Assigned Payments will be good and marketable, free and clear of all claims, liens, mortgages or encumbrances of any kind or character.

**1 of 9**

**1.5   Access to Documents.**   From and after the date of this Agreement and up to the Closing Date, Buyer shall, on reasonable notice to Seller from time to time have access to all documents and information related to the Annuity and the Assigned Payments as well as all related or underlying agreements ("Documents") for purposes of reviewing same.  When requested by Buyer, Seller shall deliver copies of the Documents to Buyer for Buyer's review and files, which Documents shall include but not be limited to (i.) a copy of the underlying settlement and release agreement/order under which Seller is entitled to receive the Assigned Payments; (ii) the Annuity contract(s); (iii) a qualified assignment and release if applicable; (iv) a structured settlement questionnaire (to be provided by Buyer and executed by Seller); (v) a statement of legal representation; (vi) a W-9 tax form; (vii) proof of Seller's age of majority and other valid government-issued personal identification; (viii) Seller's most recent federal and state income tax returns; (ix) and such other documents and information as Buyer may reasonably request depending on the personal situation of the Seller.

**1.6   Disclosure Statement.**   Seller acknowledges receipt of a disclosure statement ("Disclosure Statement") setting out various information regarding this transaction.

**1.7   Irrevocable Power of Attorney.**

   (a)   With respect only to the Assigned Payments, Seller constitutes and irrevocably appoints Buyer or Buyer's successor or assign the true and lawful attorney for Seller and for Buyer's use and benefit to accept, sign, endorse, negotiate and/or transfer without restriction, in Seller's name and on Seller's behalf, all checks, drafts, promissory notes, or other instruments, payable to Seller's order, or which may require Seller's endorsement, and received pursuant to the Assigned Payments.

   (b)   This power of attorney shall be irrevocable until such time as Buyer has received all Assigned Payments to which it is entitled pursuant to the Agreement and shall not be affected by the death or disability of the principal.

   (c)   With respect only to any promissory note given to Buyer by Seller in connection with this transaction, Seller grants Buyer the right to contact any financial institution in which Seller maintains any funds (a "Bank Account") to enforce the applicable provisions of the Agreement, such enforcement to be construed as a set-off against any and all obligations owed by seller to buyer under any promissory note given to Buyer by Seller.  Seller hereby authorizes Buyer to record all appropriate UCC financing statements or other lien document on Seller's behalf against any such Bank Account.

**1.8   Designation of Beneficiary.**   Seller designates Buyer as Seller's beneficiary to the Assigned Payments.  Seller agrees to execute such additional beneficiary designation form as may be required by the owner of the Annuity and/or the Issuer of the Annuity to carry out the intent of this Section 1.6.

**1.9   Grant of Security Interest.**   Seller hereby grants Buyer a first-priority, perfected and continuing security interest in all of Seller's right, title and interest in, to and under the Assigned Payments and the Related Rights (collectively, the "Collateral").  The term "Related Rights" as used in this Agreement means: (i) all payments in respect of the Assigned Payments; (ii) any underlying settlement and assignment documents or other ancillary documentation related to the Assigned Payments; (iii) all liens and property purporting to secure payment of the Assigned Payments (excluding, if and only to the extent applicable, any Rider to Structured Settlement Annuity Sale and Assignment Agreement for Transfer of Contingent Life Payments, or similar document, executed in connection with and supplemental to this Agreement); (iv) all rights of Seller under any annuity policy with respect to the Assigned Payments (and all proceeds and premium refunds thereof); (v) all guaranties, indemnities, warranties, financing statements and other agreements or arrangements of whatever character from time to time supporting or securing payment of the Assigned Payments; and (vi) all proceeds of and rights to enforcement with respect to any of the foregoing.  All of the Collateral shall secure payment and performance of all of Seller's obligations at any time owing to Buyer, fixed or contingent, arising under this Agreement or by operation of law or otherwise.  Upon the request of the Buyer, Seller shall furnish to

2

Buyer such documents, financing statements and endorsements as Buyer may require to perfect its security interest in the Collateral.

1.10    **Authorization to File Financing Statements.**  Seller hereby authorizes Buyer, without notice to or further assent by Seller, to file such UCC financing statements and/or amendments thereto with respect to the Collateral as Buyer deems necessary in order to perfect Buyer's security interest therein.

**SECTION TWO**
**CONDITIONS OF CLOSING, INSPECTION AND WARRANTIES**

2.1    **Conditions Precedent.**    The following conditions precedent have been inserted for the benefit of Buyer and may be waived in whole or in part by Buyer in writing at any time at Buyer's sole discretion. It shall be a condition precedent to Buyer's obligation to complete the within transaction that at the time of closing on the Closing Date:

(a)    The Annuity and Assigned Payments shall be free and clear of all claims, Adverse Claims (as defined in Section 2.2 hereof), liens, mortgages, and encumbrances of any kind or character;

(b)    All necessary final and non-appealable court orders issued by courts of competent jurisdiction shall have been obtained by Buyer at Buyer's cost and expense with the cooperation of Seller in a form acceptable to Buyer approving the nature and particulars of the within transaction and directing that the Annuity Issuer recognize the sale and assignment of the Assigned Payments to Buyer or Buyer's successors and assigns as directed by Buyer without reduction or set off and receipt by Buyer of said court order(s), certified to be a true and complete copy by an officer or clerk of the court or filed in the court issuing such order (hereinafter referred to as "Court Order");

(c)    Seller shall have caused to be terminated any UCC financing statement that purports to record a security interest in the Assigned Payments, in favor of any secured party other than Buyer;

(d)    Seller shall have provided all documents and information requested by Buyer contemplated in Section 1.5 hereof;

(e)    Buyer shall have received a written acknowledgment from the Annuity Issuer in a form satisfactory to Buyer, acting reasonably, confirming that Seller is entitled to the Assigned Payments in the amount and manner described in the Terms Rider and acknowledging the Annuity Issuer's unqualified agreement to make all of the Assigned Payments to Buyer or Buyer's named successors and assigns in accordance with the Agreement and the Terms Rider and as directed precisely in accordance with the court order(s);

(f)    Buyer shall have received the final results of its inspections, including but not limited to credit and other searches;

(g)    Seller has performed all of his obligations under the Agreement.

2.2    **Inspection.**    Buyer shall have the right to conduct one or more inspections ("Inspections") to enable it to determine whether there was filed any liens on, judgments against, or any adverse claim against the Seller and the Annuity (collectively referred to as "Adverse Claims"). Buyer, in its sole discretion, shall be entitled to discharge any Adverse Claims prior to or at the time of closing on the Closing Date by paying such amount or amounts necessary to so satisfy such Adverse Claims. In such case, the Purchase Price shall be automatically reduced by the amount of any such payments. If an undisclosed Adverse Claim affecting the Assigned Payments arises or is discovered after the Purchase

3 of 9

Price is paid to Seller. Seller does indemnify Buyer and hold Buyer harmless from any and all resulting losses, shortfalls, or other encumbrances.

2.3 **Warranties of Seller.**   Seller represents and warrants that:

(a) The Agreement, when executed and delivered by Seller, will constitute a legal, valid and binding obligation of Seller, enforceable in accordance with its terms;

(b) Seller is the holder of the entire right, title and interest in and to the Assigned Payments and has full power and authority to enter into and perform all of Seller's obligations under the Agreement, without obtaining the consent of any third party to do so. In that regard, Seller has and will at the time of closing on the Closing Date have full power and lawful authority to transfer title to the Assigned Payments to Buyer or to cause title to the Assigned Payments to be transferred to Buyer;

(c) Seller is entitled to the Assigned Payments, free and clear of any right, interest, lien, charge, encumbrance, or other claim of any other person or entity. There are no suits or proceedings pending or threatened against or affecting the Seller or the Assigned Payments which are likely to have a material adverse effect on Seller's ability to perform its obligations hereunder;

(d) The Annuity (including the Assigned Payments) has not been obtained or created in any fashion which would violate any state, federal or local law, and there are no legal or equitable defenses to the payment of said Annuity to Seller;

(e) Seller has paid all federal, state and local taxes owing through and including the date of execution of the Agreement, or has made or will make adequate provisions thereof;

(f) Seller has no obligation to any present or former spouse for support, maintenance or similar obligations nor is Seller indebted to any child for any child support or similar payment;

(g) Seller is not now in arrears or in default on any student loan. Seller has not received Aid to Families with Dependent Children, food stamp benefits, or low income energy assistance benefits and the Annuity, including the Assigned Payments, is not subject to any lien by any governmental agency to which such benefits are owed;

(h) Seller has never been known by any name other than that set forth herein;

(i) Seller's tax identification number is as set out in the Terms Rider;

(j) The description of the Assigned Payments set forth in the Terms Rider is true and correct;

(k) Seller has been independently advised and represented by counsel of choice throughout the negotiation of the Agreement. Seller has relied solely on the advice of Seller's counsel and other advisors with respect to the legal, tax and financial implications of this transaction and has not relied on Buyer's advice or the advice of Buyer's advisors and/or counsel;

(l) Seller does not need the Assigned Payments for the necessities of life (e.g.; food, housing, support, medical care). Seller wishes simply to obtain "upfront" cash rather than wait for a series of smaller scheduled payments in the future. Seller has considered other means of raising cash but after weighing options has determined that selling the Assigned Payments to Buyer would be in the best interest of the Seller;

4

(m)     Seller has not previously assigned, pledged or otherwise encumbered any portion of the Annuity, including the Assigned Payments;

(n)     Seller has never voluntarily filed for bankruptcy or been subject to an involuntary bankruptcy proceeding;

(o)     Seller has not entered into this transaction for the purpose of evading creditors;

(p)     Seller shall immediately advise Buyer in writing in the event Seller changes his address of residency;

(q)     Seller is an adult of sound mind, not acting under duress or the influence of alcohol or other drugs; and

(r)     The facts set forth by Seller in the Agreement and all Schedules attached hereto are true and complete and do not omit to disclose anything as a result of which those statement are incomplete, false or misleading.

2.4     **Indemnification.**     Seller agrees to hold harmless, defend and indemnify Buyer against all claims, losses, damages or expenses, including attorney fees, which Buyer might incur as a result of any breach or failure of any representation or warranty contained in Section 2.3 hereof or as a result of any breach of any term or provision of the Agreement.

## SECTION THREE
## DEFAULT

3.1     **Default by Buyer.**     In the event that Buyer shall fail to perform or observe any covenant or agreement to be performed or observed by it under the Agreement in a timely manner, Seller may at its option, and in addition to any other remedies available to it in law (including the UCC) or equity, declare Buyer to be in default under the Agreement by written notice to such effect given to Buyer and, at any time thereafter, Seller may declare the Agreement to be at an end.

3.2     **Default by Seller.**     In the event that Seller shall fail to perform, observe, or honor any covenant or agreement in a timely manner or be in breach of any representation or warranty hereunder, Buyer may at its option, and in addition to any other remedies available to it in law (including the UCC) or equity, declare Seller to be in default under the Agreement by written notice to such effect given to Seller and, at any time thereafter, Buyer may declare the Agreement to be at an end.

3.3     **Statutory Exception.**     Notwithstanding anything else contained in this Section 3, in the event that the transfer of the Assigned Payment fails to satisfy the conditions set forth in Chapter 626.99296, subsection 3 of the Florida Statutes, or any amendments thereto, the Seller shall not incur any penalty or other liability to Buyer.

3.4     **Remedies.**     Buyer may, in addition to any other remedies provided herein or at law, bring action at law or equity to exercise any one or more of the following remedies: (i) enforce performance of the defaulted provision, (ii) recover damages for breach thereof, along with its attorney fees and disbursements and other expenses of enforcing its rights hereunder to the extent disclosed to Seller in the Disclosure Statement.

## SECTION FOUR
## MISCELLANEOUS

5 of 9

**4.1   Entire Agreement.**   The Agreement (together with the schedules attached hereto) represents the entire agreement between the parties and supersedes and cancels any prior negotiations, oral or written agreements, letter or intent or understanding related to the subject matter hereof.

**4.2   Counterparts.**   The Agreement may be executed in several counterparts, and all so executed shall constitute on agreement, binding on both of the parties hereto, even though both parties are not signatories to the original or the same counterpart.  Any counterpart of the Agreement that has attached to it separate signature pages, which altogether contain the signatures of both of the parties hereto, shall for all purposes be deemed a fully executed instrument.  Each party to the Agreement agrees that (i.) it/he will be bound by its own telecopied signature, (ii) it/he accepts the telecopied signature of the other parties to the Agreement and (iii) it/he will promptly deliver an original signature page to the other party.

**4.3   Amendments.**   No provision of the Agreement may be amended, modified or waived except by written agreement duly executed by each of the parties hereto.

**4.4 .   No Rule of Construction.**   The parties acknowledge that the Agreement was initially prepared by Buyer but Seller and Buyer have read and fully negotiated all of the language used herein.  The parties acknowledge and agree that because Seller and Buyer participated in negotiating and drafting the Agreement, no rule of construction shall apply to the Agreement which construes any language, whether ambiguous, unclear, or otherwise, in favor of or against either Seller or Buyer.

**4.5   Severability.**   Wherever possible, each provision of the Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any such provision shall be prohibited by or be invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Agreement.

**4.6   Waiver.**   The waiver or modification by a party of performance or breach of any provision of the Agreement shall not operate or be construed as a waiver of any subsequent or other performance or breach thereof.

**4.7   Survival of Obligations.**   The representations, warranties, agreements, acknowledgments, waivers and disclaimers made or contained in the Agreement shall not merge in but survive the Closing Date and the consummation of the transaction contemplated by the Agreement, and shall remain in full force and effect until the expiration of any applicable statute of limitations.

**4.8   Governing Law.**   The Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Arizona and U.S. Federal law to the extent applicable.  In the event of a dispute, the parties agree to attorn to the courts in the Seller's domicile.  The domicile state of the Seller is the proper venue to bring any cause of action arising out of the Agreement.

**4.9   Headings.**   Section headings herein are used for convenience only and shall not otherwise affect the provision of the Agreement nor the interpretation hereof.

**4.10   Assignment.**   Buyer may, on written notice to Seller at any time prior to the Closing Date or thereafter assign the Agreement to Buyer's successors or assigns provided that Buyer shall remain liable to Seller for all of Buyer's obligations hereunder.  Seller shall not assign any of its rights or obligations under the Agreement.

**4.11   Expenses.**   Except as otherwise expressly stated in the Agreement, each party shall be responsible for paying its own fees and expenses (including attorney's fees) incurred in the negotiation of the Agreement and the documentation contemplated hereby and the closing of the within transaction.

**4.12   Legal Fees.**   In the event that a dispute arises between the parties that results in litigation including any appeals, the prevailing party shall be entitled to be fully reimbursed by the unsuccessful party for its/his legal costs and other expenses including attorney's fees on a solicitor and client scale in addition to any award granted.

6

**4.13   Waiver of Jury Trial.**      Both parties to the Agreement hereby waive the right to trial by jury in any action or proceeding instituted with respect to the Agreement.

**4.14   Notices.**      All notices, consents, requests, instructions, approvals and other communications (hereinafter collectively called "Communications") provided for in the Agreement or given or made in connection with the transaction hereby contemplated shall be given, made or served in writing and shall be delivered by hand (which shall include courier delivery) or by facsimile transmission as follows:

(a) If to Seller, to the Seller's Notice Address as set out in the Terms Rider.

(b)  If to Buyer:                                                Telecopier No: 1-800-785-3293
ACTAEA, LLC
6574 N State Rd 7 # 245
Coconut Creek FL 33073
Attention:  Maria Fregosi

Or such other address or telecopier number as either party may from time to time notify the other in accordance with this Section 4.14. All Communications made or given by delivery in accordance with the foregoing shall be conclusively deemed to have been given at the time of actual delivery thereof or, if made or given by facsimile transmission in accordance with the foregoing, shall be conclusively deemed to have been given at the time of transmittal.

**4.15   Further Acts.**      Seller shall do, make, execute, and deliver any and all such additional and further acts, assignments, assurances, and instruments as Buyer or Buyer's assigns may reasonably request for the purpose of completely vesting in Buyer or its Assigns, as the case may be, the rights assigned hereunder.

**4.16   UCC Definition.**      As used in this Agreement, "UCC" shall mean the Uniform Commercial Code as the same may, from time to time, be in effect in the state where Seller resides (the "State"); provided, however, in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of Buyer's security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State, the term "UCC" shall mean the Uniform Commercial code in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

IN WITNESS WHEREOF the parties have executed the Agreement as of the date first above written.

ACTAEA, LLC

Date: 9/22/2010            By: _____
                                        Name: Maria Fregosi
                                        Title:  COO

SELLER:

Date: 9-21-10            _____
                                 Lydia Poseyesva

## SCHEDULE "A"

## TERMS RIDER TO STRUCTURED SETTLEMENT ANNUITY
## SALE AND ASSIGNMENT AGREEMENT

Name of Seller:                                                          Lydia Posayesva

Seller's current address / Notice Address:            Navajo County, Arizona.

Seller's immediate prior address:                          N/A

Seller's social security number:                            XXX-XX-5071

Seller's tax identification number (if different from above):

Seller's spouse's name:                                        N/A

Seller's dependents' names and ages:                  N/A

Contingent Payee/ Beneficiary:

Name of Annuity Owner:                                        AEGON Structured Settlements, Inc.

Name of Annuity Issuer:                                        Monumental Life Insurance Company

Annuity Policy Number:                                          001036CS57Z

Date of Annuity Policy:                                          April 14, 1990

Payments Being Assigned:            1 payment of $10,000.00 due on Jan 20, 2013; 1 payment
                                                       of $20,000.00 due on Jan 20, 2018; 1 payment of
                                                       $22,500.00 due on Jan 20, 2023; 1 payment of $25,000.00
                                                       due on Jan 20, 2028;

8

Purchase Price:                          $16,771.84

ACTAEA, LLC

By: _Maria Fregosi_
Name: Maria Fregosi
Title:  COO

SELLER:

_Lydia Poseyesva_
Lydia Poseyesva

State of _Arizona_          }
County of _Navajo_          }          ss:

On this, the _21st_ day of _September_ _____, 2010, before me a Notary Public, personally appeared Lydia Poseyesva, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that said signatory executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Judy A. Taylor_
Notary Public

_JUDY A. TAYLOR_
Print Name:

My Commission Expires: _04-25-2013_

JUDY A. TAYLOR
NOTARY PUBLIC - ARIZONA
NAVAJO COUNTY
My Comm. Exp./April 25, 2013

# EXHIBIT 2

# ARIZONA DISCLOSURE STATEMENT
### Payee: Lydia Poseyesva - Resident of: ARIZONA

A.    The amounts and due dates of the structured settlement payments to be transferred: 1 payment of $10,000.00 due on Jan 20, 2013; 1 payment of $20,000.00 due on Jan 20, 2018; 1 payment of $22,500.00 due on Jan 20, 2023; 1 payment of $25,000.00 due on Jan 20, 2028;

B.    The aggregate amount of the payments: $77,500.00

C.    The discounted present value of the payments to be transferred which is the calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities: $59,364.86.   This amount is determined by applying the applicable federal rate of 2.40% as of September, 2010.

D.    The gross advance amount that is payable to the Payee in exchange for the payments: $16,771.84

E.    The following is an itemized listing of all applicable transfer expenses, other than attorneys' fees and related disbursements payable in connection with the transferee's application for approval of the transfer: $0.00

F.    The following is the transferee's best estimate of the amount of attorneys' fees and related disbursements payable in connection with the transferee's application for approval of the transfer: $0.00.

G.    Independent Professional Advice. Payee will be solely responsible for any independent professional advice or advisor's fees related to the rendering of any advice regarding Payee's transfer of structured settlement payments. These fees are in addition to any legal or other fees estimated above.

H.    The net advance amount that is payable to the Payee after deduction of all commissions, fees, costs, expenses and charges listed in subdivision E of this Disclosure Statement: $16,771.84

Arizona Disclosure Statement
Page 1 of 2.

Payee's Initials

I.      The amount of any penalty and the aggregate amount of any liquidated damages inclusive of penalties that are payable by the Payee in the event of any breach of the transfer agreement by the Payee: $0.00.

J.      The Payee has the right to cancel the transfer agreement, without penalty or further obligation, not later than the third (3rd) business day after the date the agreement is signed by the Payee.

YOU ARE ADVISED TO SEEK INDEPENDENT PROFESSIONAL ADVICE. ARIZONA LAW DEFINES "INDEPENDENT PROFESSIONAL ADVICE" AS "ADVICE OF AN ATTORNEY, CERTIFIED PUBLIC ACCOUNTANT, ACTUARY OR OTHER LISCENSED PROFESSIONAL ADVISER," WHO CAN ADVISE YOU REGARDING THE TRANSFER OF YOUR STRUCTURED SETTLEMENT PAYMENTS.

By signing below, I am confirming that I received a copy of this disclosure statement at least three (3) days prior to the date on which I signed the transfer agreement, pursuant to ARIZONA's structured settlement statute. By my signature, I am also confirming that I have read and understood this disclosure statement.


_8-26-10_
DATED

_Lydia Poseyesva_ (signature)
Lydia Poseyesva


ARIZONA Disclosure Statement
Page 2 of 2

_2P_
Payee's Initials

## IOWA DISCLOSURE STATEMENT
Payee: Lydia Poseyesva
Disclosure Receipt Date: August 24th, 2010

A.    Amounts and due dates of the structured settlement payments to be transferred to Actaea, LLC:

1 payment of $10,000.00 due on Jan 20, 2013; 1 payment of $20,000.00 due on Jan 20, 2018; 1 payment of $22,500.00 due on Jan 20, 2023; 1 payment of $25,000.00 due on Jan 20, 2028;

B.    Aggregate amount of the payments: $77,500.00

C.    Calculation of the current value of the transferred structured settlement payments under federal standards for valuing annuities: $59,364.86. The discount rate used in determining the calculation of current value: 2.40%

D.    Gross advance amount: $16,771.84

E.    Itemized listing of all applicable transfer expenses, other than attorney's fees and related disbursements payable in connection with the transferee's application for approval of the transfer, and the transferee's best estimate of the amount of any such fees and disbursements: Legal Fees: $0.00, Processing Fees: $0.00

F.    Net advance amount: $16,771.84

G.    Amount of any penalties or liquidated damages payable by the Payee in the event of a breach of the transfer agreement the Payee: None

H.    The Payee has the right to cancel the transfer agreement, without penalty or further obligation, not later than the third business day after the date the agreement is signed by the Payee.

I.    You are advised to obtain independent professional advice regarding the transfer.

By signing below, you acknowledge receipt of this disclosure statement on or before the date above. You are required to receive this disclosure statement not less than three (3) days prior to the date on which you sign a transfer agreement.

_Lydia Poseyesva_
**Payee: Lydia Poseyesva**

_8-25-10_
**Date**

# EXHIBIT 3

# AFFIDAVIT

I, Lydia Poseyesva, of full age, being duly sworn according to law, upon my oath depose and say:

1.      I currently reside in Navajo County, Arizona.

2.      I am the recipient of certain guaranteed payments under a structured settlement dated in or around 1990. The entity presently obligated to make the payments due under the structured settlement is AEGON Structured Settlements, Inc. In order to meet its obligations under the settlement agreement, AEGON Structured Settlements, Inc., purchased an annuity from Monumental Life Insurance Company.

3.      I voluntarily entered into a Structured Settlement Annuity Sale and Assignment Agreement (the "Agreement") dated August 28, 2010 with Actaea, LLC ("AC"). Under that Agreement, I agreed to sell and assign to AC the following payments due to me under the structured settlement:

**1 payment of $10,000.00 due on Jan 20, 2013; 1 payment of $20,000.00 due on Jan 20, 2018; 1 payment of $22,500.00 due on Jan 20, 2023; 1 payment of $25,000.00 due on Jan 20, 2028; (the "Assigned Payments").**

4.      I understand that I will forego receipt of the Assigned Payments under the Agreement. I understand that my beneficiaries/heirs and I will no longer receive any of the Assigned Payments or any portion of the Assigned Payments. I understand that all of the Assigned Payments will go to AC or the assigns of AC.

5.      I also understand that this Affidavit is submitted for use in the court approval process initiated by AC and myself to seek court approval of the transfer of payments to AC.

6.      I also received from AC a Disclosure Statement detailing the terms of the Agreement that I signed and returned to AC. I carefully reviewed the Disclosure Statement and fully and completely understand all terms of the Disclosure Statement.

7.    In the Disclosure Statement, AC advised me to seek professional advice regarding the Agreement from an attorney, accountant or other professional of my choice.

    A.    _JL_ Initials: I chose not to retain or consult with such a professional. I understand that at all times, including at the time I entered the Agreement and received the Disclosure Statement, and for all times, I knowingly waive the right to seek or obtain for myself independent professional advice regarding the Agreement.

    B.    ____ Initials: I chose to retain or consult with an attorney, accountant or other licensed professional advisor of my choice.

8.    I am 57 years old and have supported myself for the last 39 years.

9.    I have thoroughly considered this transaction, my alternatives and the use to which I will put the proceeds of this sale. I have considered the impact of this transaction on me and have determined that I will be able to improve my present standard of living if I am permitted to transfer and assign my right to receive the Assigned Payments to AC as described in this Affidavit. After considering these factors I believe that this transaction is in my best interest.

10.    I intend to use the proceeds I receive from AC under the Agreement to repair my handicap ramp and do some repairs on my home. I use a wheelchair and my ramp is in extremely poor condition. It is in my best interest to install a new ramp before it gets to the point that I can't use it for fear of injury. The approximate cost for a new ramp is $4,500.00. In addition, due to my condition I spend most of my time on my front porch, which is also in bad shape and needs to be repaired. Some of the floor boards have rotted and need to be replaced and stained. The repairs are estimated at $3,000.00. Also, I need to replace five of the windows in my home. The windows are the original ones that came with the house that is over 25 years old, they are drafty and the wood and paint around them is chipping off to the point that they do not provide much protection against the elements. The estimated cost of replacing the windows is $2,500.00. I also need to install rain gutters which will cost $2,100.00. I have had many

problems with my current stove and am in dire need to replace it. The stove that I intend to purchase is a pellet stove which has an estimated cost of $2,200.00.

11. I will not be using any portion of the proceeds from the Agreement for day-to-day expenses. I have never assigned, sold or pledged any of the payments that are proposed to be assigned in this transaction, to any party or entity. I have sufficient income to support myself. I have determined that the proceeds from the Agreement with AC is in my best interest and the best interest of my family and will improve our quality of life.


*Lydia Poseyesva*
Lydia Poseyesva

State of _Arizona_ )
                              ) ss:
County of _Navajo_ )

On this, the _17th_ day of _September_, 2010, before me a Notary Public, personally appeared **Lydia Poseyesva**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that said signatory executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

*Judy A. Taylor*
Notary Public
JUDY A. TAYLOR
Print Name:

My Commission Expires: _04-25-2013_

JUDY A. TAYLOR
NOTARY PUBLIC - ARIZONA
NAVAJO COUNTY
My Comm. Exp.: April 25, 2013

JUDY A. TAYLOR
NOTARY PUBLIC - ARIZONA
NAVAJO COUNTY
My Comm. Exp. April 25, 2013

# EXHIBIT 4

## Payee's Declaration in Support of

## Application to Transfer Structured Settlement Payment Rights

I, Lydia Poseyesva, the Payee, declare:

1. **Payee's name, address and age:** Lydia Poseyesva, P.O. Box 261, Polacca, AZ 86042 – AGE = 58.

2. **Marital Status:**

    __X__ Never Married; _____ Married; _____ Separated; _____ Divorced

    If married or separated, name of spouse: _____.

3. **Minor children and other dependents:**

    Names, ages, and places of residence: None.

4. **Income:**

    (A)    Payee's monthly income and sources: _____

    _____.

    (B)    If presently married, spouse's monthly income and sources: _____

    _____.

5. **Child support or Spousal Support:**

    Obligation to pay:    _____ Yes    __X__ No

    (A)    If yes, state the amount of the obligation, to whom payable, and whether there are arrearages: _____

    _____.

    (B)    State the jurisdiction and name of the court that entered the order, the case number of the action in which the order was entered, the parties to such action, and the date when the order was entered: _____

    _____

    _____

6. **Prior Orders:**

    Are you, the Payee, are subject to any orders in any civil, probate, or criminal case which requires you, the Payee, to pay money to any person:

    _____ Yes    __X__ No

If yes, for each such order state (use attachment if necessary):

(A)     The amount of the obligation, to whom it is payable, and whether there are arrearages, and, if so, the amount: _____

_____

_____.

(B)     The jurisdiction and name of the court that entered the order, the case number of the action in which the order was entered, the parties to such action, and the date when the order was entered: _____

_____

_____.

## 7.     Previous transfer(s):

Have you previously filed an application to any court or responsible administrative authority for approval of a transfer of payment rights under the structured settlement that is the subject of this application:

_____ Yes __X__ No

If yes, for each such application state (use attachment if necessary):

(A)     The jurisdiction and name of the court or responsible administrative authority that considered the application, the case number of the action in which the application was submitted, the parties to such action, and the date when the application was filed: _____

_____

_____, and

(B)     Whether the application was approved or disapproved, the dated of the order approving or disapproving the transfer: _____

_____

_____and, if approved:

(i)     State the name of the transferee and the payment amount(s) and due dates of the payments involved in the transfer: _____

_____

_____ ; and

    (ii)    State the amount of money you, the payee, received from the transferee for the transfer, if any, and the manner in which the money was used: _____

_____

_____

_____ .

**8.**    **Other transfers:**

Have you, the payee, ever transferred payment rights under the structured settlement without court approval or the approval of a responsible administrative authority: _____ Yes _____X____ No

If yes, for each such transfer state:

    (A)    The name of the transferee and the payment amount(s) and due dates of the payments involved in the transfer: _____

_____

_____ and;

    (B)    The amount of money you, the payee, received from the transferee for the transfer, if any, and the manner in which the money was used: _____

_____

_____ .

**9.**    **Reasons for transfer:**

Describe in detail your reasons for the proposed transfer of payments rights and your plans for using the proceeds from the transfer: I plan on using the proceeds to repair my handicap ramp and do some repairs to my home. I use a wheelchair and my ramp is in extremely poor condition. It is in my best interest to install a new ramp before it gest to the point that I cannot use it for fear of injury. The approximate cost for a new ramp is $4,500.00. In addition, due to my condition, I spend most of my time on the front porch, which is also in bad shape and needs to

be repaired. Some of the floor boards have rotted and need to be replaced and stained, the repairs are estimated at $3,000.00. also, I need to replace five of the windows in my home. The windows are the original ones that came with the house that is over 25 years old, they are drafty and the wood and paint around them is chipping off to the point that they do not provide much protection from the elements. The estimated cost of replacing the windows is $2,500.00. I also need to install rain gutters which will cost $2,100.00. I have had many problems with my current stove and am in dire need to replace it. The stove that I intend to purchase is a pellet stove which has an estimated cost of $2,200.00.

10.    **Payment of debts:**

If you intend to use the proceeds from the proposed transfer to pay debts, list the amount of such debt, the name and address of the creditor to whom it is owed, and, if applicable, the rate of interest which is accruing on such debt (use the back or bottom of this page if you need more space):

| Amount Owed | Creditor Name and Address | Interest Rate |
|---|---|---|
| $ | | |
| $ | | |
| $ | | |
| $ | | |
| $ | | |
| $ | | |

I declare under penalty of perjury that the foregoing is true and correct.

_Lydia Poseyesva_
Signature

_9 - 29 - 10_
Date

_Lydia Poseyesva_
Printed Name

JUDY A. TAYLOR
NOTARY PUBLIC - ARIZONA
NAVAJO COUNTY
My Comm. Exp. April 25, 2013

_Judy A. Taylor_

**EXHIBIT 5**

*Please complete and sign. If you are married, your spouse must complete & sign Section B.*

## CERTIFICATE OF MARITAL STATUS

### SECTION A

I, Lydia Poseyesva, hereby certify that I am:

a. _____ Married

b. _____ Divorced (If divorced, please return a copy of your divorce decree).

c. _____ Widowed (If widowed, please return a copy of your spouse's death certificate).

d. ____✓____ Never married

Dated: 9-21-10 _____      *Lydia Poseyesva*
                              Lydia Poseyesva

### SECTION B

Spousal Consent:

1. I, _____, whose address is _____ am the spouse of Lydia Poseyesva who has entered into the attached SALE AND ASSIGNMENT AGREEMENT ("Assignment") dated September 21, 2010 with ACTAEA, LLC.

2. My Social Security Number is _____.

3. In the past six (6) months, I have resided at the following address(es):

   _____

   _____

4. I consent to my spouse entering into the Assignment to ACTAEA, LLC in accordance with the terms of the Assignment.

Dated: _____      _____
                              (Spouse's Signature)

Please comple..... .d sign. If you are married, your spouse must compl.. ..ign Section B.

## Client Acknowledgement

State of _Arizona_

County of _Navajo_                          } ss:

On this, the 21st day of _September_ _____, 2010, before me a Notary Public, personally appeared Lydia Poseyesva, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that said signatory executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Judy A. Taylor_                            My Commission Expires: _04-25-2013_
Notary Public

_JUDY A. TAYLOR_
Print Name:

> **JUDY A. TAYLOR**
> NOTARY PUBLIC - ARIZONA
> NAVAJO COUNTY
> My Comm. Exp. April 25, 2013

## Spouse's Acknowledgement

State of _____

County of _____        } ss:

On this, the _____ day of _____, 2010 before me a Notary Public, personally appeared_____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that said signatory executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____             My Commission Expires: _____
Notary Public

_____
Print Name:

# DEPENDENTS OF LYDIA POSEYESVA

*Instructions:*

If you have dependents, fill out and sign in Section A.

**OR**

If you have no dependents, please fill out and sign Section B.

"Dependents" include your spouse and minor children and all other family members and other persons for whom you are legally obligated to provide support, including alimony.

---

**SECTION A**

I have dependents as listed below:

Lydia Poseyesva _____     Date _____

| Dependent's Name | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**SECTION B.**

I have **no** dependents:

*Lydia Poseyesva*          9-21-10
Lydia Poseyesva           Date